Isadora SHAPIRO, by and through her parents and natural guardians, Gary SHAPIRO and Laurie Shapiro, Plaintiff–Appellant,

v.

PARADISE VALLEY UNIFIED SCHOOL DISTRICT NO. 69, Defendant–Appellee.

Isadora Shapiro, by and through her parents and natural guardians, Gary Shapiro and Laurie Shapiro, Plaintiff–Appellee,

v.

Paradise Valley Unified School Opinion District No. 69, Defendant–Appellant.

Nos. 02–16786, 02–17000.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2004.

Filed July 6, 2004.

Stephen Walker, Beachwood, OH, for the plaintiff-appellant and cross-appellee.

Gary L. Lassen, Jennings, Strouss & Salmon, Phoenix, AR, for the defendant-appellee and cross-appellant.

Before: TASHIMA and CLIFTON, Circuit Judges, and LEIGHTON, District Judge.*

TASHIMA, Circuit Judge:

Plaintiff–Appellant Isadora Shapiro ("Dori"), by and through her parents, Gary and Laurie Shapiro, filed a complaint in the district court pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1487, seeking review of administrative decisions regarding the educational program offered by Defendant–Appellee Paradise Valley Unified School District ("PVUSD") for Dori, who is hearing impaired. The subject of this third appeal is the district court's award of attorney's fees to the Shapiros, pursuant to 20 U.S.C. § 1415(i)(3)(B), which excluded fees for work performed by their attorney prior to his admission to practice *pro hac vice* in state court. PVUSD cross-appeals the district court's determination of prevailing-party status under the IDEA attorney's fee provision, as well as the amount of the award. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court in all respects.

## BACKGROUND

Dori was enrolled at the Central Institute for the Deaf ("CID") in St. Louis, Missouri, during the school years 1991–1992, 1992–1993, and 1993–1994. During the summers of 1992 and 1993, she received services through PVUSD, her local school district in the Phoenix area. PVUSD created a program for the hearing impaired for the school year 1994–1995 but, after several meetings with PVUSD, the Shapiros decided to enroll their daughter at CID again.[1]

Because the parties disagreed about the proper placement for Dori, a due process hearing was held.[2] The hearing officer,

---

* The Honorable Ronald B. Leighton, United States District Judge for the Western District of Washington, sitting by designation.

1. The facts are set forth in more detail in *Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 317 F.3d 1072, 1074–75 (9th Cir.2003) (*"Shapiro II "*).

2. Under 20 U.S.C. § 1415(f)(1), parents who complain about their child's education have "an opportunity for an impartial due process

Harold Merkow, concluded that PVUSD's program complied with the IDEA but that PVUSD had to reimburse the Shapiros for the 1994–1995 costs of educating Dori. PVUSD appealed, and the appellate hearing officer concluded that PVUSD had offered a free and appropriate public education and that the Shapiros were not entitled to a reimbursement. The Shapiros then filed a complaint in the United States District Court for the District of Arizona, which held that PVUSD had violated several procedural requirements of the IDEA, resulting in the "loss of educational opportunity to Dori." The court also found that the Shapiros were entitled to reimbursement for the 1994–1995 school year if CID had offered an appropriate education for Dori. It remanded to the hearing officer for a determination of whether CID was an appropriate educational program and terminated the action. On appeal, we vacated the order terminating the action and remanded for the entry of a stay pending a final determination by the hearing officer. *Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 152 F.3d 1159, 1160–61 (9th Cir.1998) (per curiam).

On remand, the Arizona Department of Education referred the matter to Administrative Law Judge ("ALJ") Eric A. Bryant, who raised the issue of the authority of the Shapiros' counsel, Stephen Walker, who was not admitted to the practice of law in Arizona, to represent the Shapiros. Following briefing on the issue, ALJ Bryant concluded, on July 21, 1999, that Walker was not authorized to represent the Shapiros at the administrative hearing because

Walker was not a member of the State Bar of Arizona. Walker then petitioned the Maricopa County Superior Court to be admitted *pro hac vice* and, on February 17, 2000, the Superior Court issued an order authorizing Walker to proceed *pro hac vice* and ordering ALJ Bryant to admit Walker to represent the Shapiros in the matter. On April 5, 2000, ALJ Bryant ordered that Walker could appear *pro hac vice*. ALJ Bryant held hearings in August 2000 and, in November 2000, found that CID provided an appropriate educational program. The district court affirmed and awarded the Shapiros $23,804 as reimbursement for the 1994–1995 school year. This court affirmed the judgment of the district court. *Shapiro II*, 317 F.3d at 1080.

After judgment was entered, the Shapiros moved in the district court for attorney's fees. Although Walker was not admitted to practice *pro hac vice* in Arizona until February 17, 2000, Walker argued that the oral consent of Merkow, the hearing officer in the original administrative hearing, and the failure of PVUSD to object to his appearance entitled the Shapiros to attorney's fees prior to his admission to practice *pro hac vice*. The district court rejected the argument that Merkow's consent was sufficient to authorize Walker to practice law in Arizona. Reasoning that Walker had failed to comply with the prescribed rules for admission to practice *pro hac vice* in Arizona, the district court concluded that the time Walker spent prior to February 17, 2000, was not compensable.[3]

hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency."

3. The district court also rejected PVUSD's argument that the time Walker spent in federal court was not compensable. The court

noted that Walker's first application to appear *pro hac vice* in federal court was denied for failure to comply with a local rule. In June 1999, however, the court ruled that Walker could appear *pro hac vice* in federal court, *nunc pro tunc* to June 11, 1996, after Walker paid the requisite fee. Walker was therefore

The district court further concluded that the Shapiros were the prevailing parties for purposes of 20 U.S.C. § 1415(i)(3)(B) and that the fees requested by Walker were reasonable. On August 7, 2002, the district court entered judgment for the Shapiros for $31,000, as attorney's fees.

On August 12, 2002, the Shapiros filed a motion for partial reconsideration, arguing that Walker's fee for his application for *pro hac vice* status in federal court was paid and the check cashed by the court in January 1996. The district court granted the . motion for partial reconsideration, modifying the fee award to include $21,697.50 for pre-June 11, 1996, work before the district court, and $21,000 for work before the Ninth Circuit, resulting in a total award of $73,797.50. The amended judgment was entered on September 3, 2002. The Shapiros filed a notice of appeal from the August 7, 2002, order on September 5, 2002. PVUSD filed a notice of appeal from the amended judgment on October 2, 2002.

## STANDARD OF REVIEW

■■■ The district court's award of attorney's fees is reviewed for an abuse of discretion. *Fischel v. Equitable Life Assurance Soc'y of the United States,* 307 F.3d 997, 1005 (9th Cir.2002). The district court's underlying factual determinations are reviewed for clear error and its legal analysis relevant to the fee determination is reviewed de novo. *Id.*

## DISCUSSION

### I. The Shapiros' Appeal

The IDEA provides that the district court, "in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). The Shapiros contend that the district court erred in disallowing attorney's fees prior to the date that Walker was admitted to practice *pro hac vice* in Arizona. They argue that the administrative hearing officer had the authority to waive the *pro hac vice* requirements orally and that he did so by approving of Walker's representation of the Shapiros.

The district court relied on *Z.A. v. San Bruno Park Sch. Dist.,* 165 F.3d 1273 (9th Cir.1999), in deciding that the Shapiros were not entitled to fees prior to February 2000. In *Z.A.,* the issue was whether "a party, represented by an attorney who is admitted to the United States District Court for the Northern District of California but is not admitted to the California State Bar, may be awarded attorneys' fees for a state administrative proceeding under the IDEA." *Id.* at 1274. Relying on California caselaw holding that "no person may recover compensation for services as an attorney in California unless he or she was a member of the state bar at the time the services were rendered," *Z.A.* reasoned that "[a] person is or is not licensed to practice law in a particular forum. There is no halfway." *Id.* at 1275–76 (citing *Birbrower, Montalbano, Condon & Frank v. Superior Court,* 17 Cal.4th 119, 70 Cal.Rptr.2d 304, 949 P.2d 1 (1998)). Because the attorney in *Z.A.* was not licensed to practice in California, he was not entitled to collect attorney's fees. *Id.* at 1276.

The Shapiros attempt to distinguish *Z.A.* on the basis that the right to practice law in California is a legislative decision, whereas, in Arizona, the court determines who is authorized to practice law.[4] They

permitted to recover fees for work performed in federal court after June 11, 1996.

**4.** *Z.A.* also held that the due process hearing mandated by the IDEA under 20 U.S.C.

rely on *Hunt v. Maricopa County Employees Merit Sys. Comm'n,* 127 Ariz. 259, 619 P.2d 1036 (1980), in which the Arizona Supreme Court stated that "the practice of law is a matter exclusively within the authority of the Judiciary. The determination of who shall practice law in Arizona and under what condition is a function placed by the state constitution in this court." *Id.* at 1038–39.

*Hunt,* however, does not advance the Shapiros' argument. The fact remains that no person is allowed to practice law in Arizona unless that person is an active member of the State Bar, Ariz. S.Ct. R. 31(b), or is authorized to appear *pro hac vice,* Ariz. S.Ct. R. 33(d). Under Rule 33(d), an attorney who is not a member of the Arizona State Bar may appear *pro hac vice* "upon compliance with this rule," including an application to appear *pro hac vice.* The Shapiros do not argue that Walker complied with this rule at the first administrative hearing; instead, they rely solely on their argument that Merkow's and opposing counsel's "consent" authorized Walker to represent the Shapiros.

■ The general statement in *Hunt* that the determination of who shall practice law in Arizona is under the court's authority does not undermine the authority of the rules of the Arizona Supreme Court regarding the practice of law in Arizona. *Hunt* certainly cannot be construed as authorizing an administrative hearing officer to waive the requirements of Rule 33 for admission *pro hac vice,* particularly in light of the fact that Rule 31(d) lists a number of exceptions to the prohibition against the unauthorized practice of law, including various administrative proceedings, but there is no exception for IDEA due process hearings. *See* Ariz. S.Ct. R. 31(c). The Arizona Supreme Court's rules regulating the practice of law, including admission *pro hac vice,* are mandatory and must be followed. The district court's order awarding attorney's fees only from the date of Walker's admission to practice *pro hac vice* accordingly is affirmed.

## II. PVUSD's Cross–Appeal

PVUSD cross-appeals both the district court's determination that the Shapiros were the prevailing parties for purposes of the IDEA and the amount of the fee award. The Shapiros contend that PVUSD has waived the issue of whether they were the prevailing parties because it never appealed the original August 7, 2002, order awarding fees.[5] *See* Fed. R.App. P. 3(c)(1)(B) (stating that the notice of appeal must "designate the judgment, order, or part thereof being appealed"). In its notice of appeal, PVUSD designated only the September 3, 2002, amended judgment, by which the district court increased the amount of attorney's fees.

### A. Timeliness of Cross–Appeal

Before addressing the question of whether PVUSD waived the prevailing party issue, we must examine the timeliness of PVUSD's notice of appeal. The original order, determining that the Shapiros were the prevailing parties, was filed on August 7, 2002. The Shapiros filed their motion for partial reconsideration on

§ 1415(f)(1) was a state proceeding. 165 F.3d at 1275. PVUSD does not attempt to distinguish .A. on the basis that the IDEA due process hearing in Arizona is not a state proceeding.

5. The Shapiros also argue that PVUSD waived the issue by failing to raise it before the district court. In its August 7, 2002, order granting attorney's fees, however, the district court stated that "PVUSD challenges whether Plaintiff truly is a 'prevailing' party," and went on to consider the issue.

August 12, 2002. The order granting the motion for reconsideration and the resultant amended judgment increasing the amount of attorney's fees were filed on September 3, 2002. The Shapiros filed their notice of appeal on September 5, 2002, stating that they were appealing the August 7, 2002, order. PVUSD filed its notice of appeal on October 2, 2002, stating that it was appealing from the amended judgment entered on September 3, 2002.

Federal Rule of Appellate Procedure 4(a)(3) allows a party to file a cross-appeal either "within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later." Fed. R.App. P. 4(a)(3). PVUSD did not file its notice of appeal within 14 days after the Shapiros filed their notice of appeal. Rule 4 further provides, however, that if a party timely files in the district court, *inter alia,* a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59, or for relief under Rule 60, if filed within ten days, "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R.App. P. 4(a)(4)(A); *see also McCarthy v. Mayo,* 827 F.2d 1310, 1313 n. 1 (9th Cir.1987) (stating that a timely Rule 59(e) motion tolls the time period for filing a notice of appeal and that the thirty-day time period for filing the notice of appeal begins when the district court denies the Rule 59(e) motion).

■ The Shapiros' August 12, 2002, motion for partial reconsideration, which was timely, does not state under which rule the motion was brought. Nonetheless, a timely filed motion for reconsideration under a local rule is construed as a motion to alter or amend a judgment under Rule 59(e). *Schroeder v. McDonald,* 55 F.3d 454, 459 (9th Cir.1995); *see also Am. Ironworks & Erectors Inc. v. N. Am.*

*Constr. Corp.,* 248 F.3d 892, 898–99 (9th Cir.2001) (stating that a motion for reconsideration is treated as a Rule 59(e) motion if filed within ten days of entry of judgment, but as a Rule 60(b) motion if filed more than ten days after judgment). We therefore construe the Shapiros' motion as having been filed under Rule 59(e). The time for filing a notice of appeal, accordingly, was tolled until the district court's order granting the motion, rendering PVUSD's notice of appeal timely. *See* Fed. R.App. P. 4(a)(3), 4(a)(4)(A)(iv); *cf. United States v. Nutri-cology, Inc.,* 982 F.2d 394, 397 (9th Cir.1992) (stating that"[a] motion, however labelled, served within ten days of the entry of an order that could have been brought under Rule 59(e) tolls the time for filing a notice of appeal" (citation omitted)).

**B. Waiver of Prevailing Party Issue**

■ Where "a party seeks to argue the merits of an order that does not appear on the face of the notice of appeal," we consider two factors: (1) whether the intent to appeal a specific judgment can be fairly inferred, and (2) whether the appellee was prejudiced by the mistake. *Lolli v. County of Orange,* 351 F.3d 410, 414 (9th Cir. 2003). The policy underlying this test is that it would violate the spirit of the Federal Rules of Civil Procedure to "avoid a decision on the merits on the basis of mere technicalities." *McCarthy,* 827 F.2d at 1314 (citing *Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

■ Generally, the intent to appeal a specific judgment can be fairly inferred where the failure to cite the specific judgment was clearly an oversight or mistake, or when such intent makes sense in light of the circumstances. *See, e.g., Lolli,* 351 F.3d at 414 (finding that the party's intent to appeal the grant of summary judgment against him "can be inferred, as we fre-

quently have done when a party appeals after its motion for reconsideration was denied"); *United States v. Belgarde*, 300 F.3d 1177, 1180 (9th Cir.2002) (finding that the government intended to appeal both the dismissal of the indictment and the denial of its motion for reconsideration, even though the government failed to specify the order dismissing the indictment); *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1173 (9th Cir.1996) (finding that the appellant intended to appeal both the award of sanctions and the amount of sanctions, even though the notice of appeal listed only the order setting the amount, because the notice of appeal and his opening brief gave the appellee adequate notice of his intent); *McCarthy*, 827 F.2d at 1314 (stating that it could be fairly inferred that the appellant intended to appeal the original summary judgment against him "when he designated the denial of his postjudgment motions as the order being appealed"). Thus, for example, in *Belgarde*, the government's intent to appeal the dismissal of the indictment, and not merely the denial of its motion for reconsideration of the order dismissing the indictment, could be inferred. *Belgarde*, 300 F.3d at 1180.

■ The situation here, however, is different from that presented in the precedent. It was the Shapiros, not PVUSD, who filed the original notice of appeal of the order awarding attorney's fees. The Shapiros appealed because the district court ruled against them on the issue of Walker's right to practice law in Arizona. Thus, unlike *McCarthy, Belgarde*, and *Lolli*, in which there was clearly one losing party who would appeal both a denial of a motion for reconsideration, as well as the original adverse judgment, the Shapiros were the party who wanted to appeal the original judgment that was adverse to them. PVUSD did not appeal until the amount of attorney's fees was greatly increased, and its notice of appeal stated only that it was appealing "from the amended judgment entered in this action on September 3, 2002 regarding attorney fees." It therefore is not clear that PVUSD considered the original judgment to be adverse to it. PVUSD's notice of appeal, in fact, indicates that PVUSD was troubled only by the increased amount of attorney's fees.

The second factor, prejudice to the appellee, however, weighs in PVUSD's favor. PVUSD argued the prevailing party issue in its opening brief on cross-appeal, and the Shapiros have had the opportunity to respond to it in their answering brief to the cross-appeal. *Cf. Simpson*, 77 F.3d at 1173 (finding that the opening brief gave the appellee adequate notice of the appellant's intent to appeal both the award and the amount of sanctions); *McCarthy*, 827 F.2d at 1314 (finding no prejudice where the opening brief addressed the district court's initial ruling and the appellees had also fully briefed the issues). Moreover, both the amended judgment referred to by PVUSD and the order appealed from by the Shapiros pertain to attorney's fees. For these reasons, we conclude that the prevailing party issue raised by PVUSD's cross-appeal is properly before us.

## C. Merits of Prevailing Party Issue

■ PVUSD argues that the Shapiros were not the prevailing parties because the judgment in their favor was "technical" and de minimis, citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), and *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489 (9th Cir.1994). In *Buckhannon*, the Supreme Court "held that the term 'prevailing party,' as it is used in various attorney's fees statutes, requires a

'material alteration of the legal relationship of the parties.' "[6] *Bennett v. Yoshina,* 259 F.3d 1097, 1100 (9th Cir.2001) (quoting *Buckhannon,* 532 U.S. at 604, 121 S.Ct. 1835). *Buckhannon* concerned the attorney's fees provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disabilities Act. We have not yet had occasion to determine whether *Buckhannon* applies to the IDEA's attorney's fees provision. We have, however, applied *Buckhannon* to a number of other attorney's fees statutes. *See, e.g., Kasza v. Whitman,* 325 F.3d 1178, 1180 (9th Cir. 2003) (applying *Buckhannon* to the fee-shifting provision of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6972(e)); *Perez–Arellano v. Smith,* 279 F.3d 791, 793–94 (9th Cir.2002) (applying *Buckhannon* to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)); *Bennett,* 259 F.3d at 1100–01 (applying *Buckhannon* to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988).

▪ Moreover, all of the other circuits to confront the issue have held that *Buckhannon* applies to the attorney's fees provision of the IDEA. *See T.D. v. LaGrange Sch. Dist. No. 102,* 349 F.3d 469, 471 (7th Cir.2003) (holding that *Buckhannon* applies to the attorney's fees provision of the IDEA); *John T. v. Del. County Intermediate Unit,* 318 F.3d 545, 555–58 (3d Cir. 2003) (same); *J.C. v. Reg'l Sch. Dist. 10,* 278 F.3d 119, 123–25 (2d Cir.2002) (same); *see also G ex rel. RG v. Fort Bragg Dependent Sch.,* 343 F.3d 295, 310 (4th Cir.2003) (relying on *Buckhannon* in an IDEA case); *Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.,* 321 F.3d 9, 15 (1st Cir.2003)

(same). We see no reason not to follow this consistent line of precedent from our own and other circuits applying *Buckhannon.* We therefore conclude that *Buckhannon's* definition of "prevailing party" applies to the IDEA's attorney's fees provision, 20 U.S.C. § 1415(i)(3)(B).

▪ PVUSD correctly contends that a plaintiff is not the prevailing party if his or her success is purely technical or de minimis. *Parents of Student W.,* 31 F.3d at 1498. Nevertheless, it is also true that a party may be accorded prevailing party status by being awarded "some relief by the court," even if only an award of nominal damages. *Buckhannon,* 532 U.S. at 603–04, 121 S.Ct. 1835; *see also Me. Sch. Admin. Dist. No. 35,* 321 F.3d at 15 (stating that a prevailing party must "succeed on the merits of a claim or defense," but that "a party may be considered 'prevailing' even without obtaining a favorable final judgment on all (or even the most crucial) of her claims"). Thus, "[e]ssentially, in order to be considered a 'prevailing party' after *Buckhannon,* a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." *Roberson v. Giuliani,* 346 F.3d 75, 79 (2d Cir.2003). There is no question that the Shapiros prevailed on several significant aspects of their claim and were awarded money damages by the court. The district court did not abuse its discretion in determining that the Shapiros were the prevailing parties for IDEA purposes.

## D. Amount of the Fee Award

▪ PVUSD contends that the amount of the award was unreasonable, arguing

---

6. *Buckhannon* also held that "the 'catalyst theory'—whereby a party is considered prevailing so long as he or she can prove that the pending litigation was a catalyst that brought about the policy change—is not a permissible basis for the award of attorneys' fees." *Barri-*

*os v. Cal. Interscholastic Fed'n,* 277 F.3d 1128, 1134 n. 5. (9th Cir.2002) (quoting *Buckhannon,* 532 U.S. at 605, 121 S.Ct. 1835), cert. denied, 537 U.S. 820, 123 S.Ct. 98, 154 L.Ed.2d 28 (2002).

that the court's calculation was not based on the prevailing market rate. PVUSD complains that the $250/hour rate used by the court was higher than that typically charged "by defense counsel in this area," and that there is no documentary support for the amount of the fee paid by the Shapiros.

The district court cited Local Rule 2.20 in finding that Walker's fee petition and his hourly rate of $250 were reasonable. Rule 2.20 sets forth a number of factors to consider in determining the reasonableness of a fee request.[7] U.S. Dist. Ct., D. Ariz., Rule 2.20(c)(3). The court reasoned that (1) the lawsuit was "time consuming, fact intensive and procedurally complex"; (2) Walker appeared in state administrative proceedings, state appeals, federal district court, and the Ninth Circuit; and (3) as a solo practitioner, Walker was limited in his ability to accept other employment. The court also affirmed Walker's hourly rate of $250, taking into consideration Walker's familiarity with the IDEA and the contingent nature of his fee agreement with the Shapiros. The court rejected PVUSD's assertion that the $250/hour rate was high because PVUSD had proffered no affidavits to support its statements. Finally, the court stated that PVUSD had unnecessarily prolonged litigation, increasing the costs of the lawsuit, by insisting on litigating whether CID provided an appropriate education for Dori. The court quoted the ALJ, who emphasized that CID specializes in educating children like Dori and that to contend that CID did not provide an appropriate education was "simply grasping at straws."

PVUSD offers no argument that would support a finding that the district court abused its discretion. PVUSD merely repeats its unsupported assertion that the $250 hourly rate was higher than the rate charged by its own attorneys.

PVUSD also challenges the lack of a document memorializing the fee agreement between Walker and the Shapiros. The Shapiros, however, included an affidavit by Walker in which Walker described the fee agreement, in support of their motion for attorney's fees. The district court did not abuse its discretion in determining the amount of the fee award.

## CONCLUSION

The Arizona Supreme Court's rules requiring admission *pro hac vice* for attorneys who are not members of the State Bar of Arizona cannot be waived by oral consent. The Shapiros clearly were the prevailing parties for purposes of recovering attorney's fees under the IDEA, and PVUSD has failed to offer any evidence to support its assertion that the district court abused its discretion in determining the amount of attorney's fees. The judgment of the district court is

**AFFIRMED.**

7. The factors include, but are not limited to, the time and labor required; the novelty and difficulty of the questions presented; the skill required to perform the legal service properly; the preclusion of other employment by counsel; the customary fee charged in similar matters; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount of money, or the value of the rights, involved, and the results obtained; the experience, reputation and ability of counsel; the "undesirability" of the case; the nature and length of the professional relationship between the attorney and the client; awards in similar actions; and any other appropriate considerations. U.S. Dist. Ct., D. Ariz., Rule 2.20(c)(3)."