**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSEPH PARK, by and through his
Guardian ad Litem, Kyung Hee
Park; KYUNG HEE PARK,
        *Plaintiffs-Appellants,*

        v.

ANAHEIM UNION HIGH SCHOOL
DISTRICT; GREATER ANAHEIM
SELPA,
        *Defendants-Appellees.*

No. 04-55569

D.C. No.
CV-03-02222-DSF

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
December 7, 2005—Pasadena, California

Filed September 28, 2006

Before: Robert R. Beezer, Cynthia Holcomb Hall, and
Kim McLane Wardlaw, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Beezer

17049

## COUNSEL

Benjamin Y. Kim, Torrance, California; Paula D. Pearlman and Shawna L. Parks, Western Law Center for Disability Rights, Los Angeles, California, for the plaintiffs-appellants.

Jonathan J. Mott, Parker & Covert LLP, Tustin, California, for the defendants-appellees.

## ORDER

The panel has voted to GRANT appellant's petition for rehearing and to REJECT the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing is granted and the suggestion for rehearing en banc is rejected.

The opinion and dissent, filed on April 17, 2006, are hereby VACATED and REPLACED by the per curiam opinion and concurrence filed on September 28, 2006.

No subsequent petitions for rehearing or rehearing en banc shall be filed.

IT IS SO ORDERED.

## OPINION

PER CURIAM:

Joseph Park ("Joseph") and his mother, Kyung Hee Park, bring this action against the Anaheim Union High School District ("District") and the Greater Anaheim Special Education Local Plan Area. The complaint alleges that defendants have failed to comply with procedural and substantive requirements of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq.[1] The Parks expressly challenge the award of compensatory services and the denial of attorney's fees. The district court affirmed the decisions of the Hearing Officer of the California Special Education Hearing Office in part and modified minor details in part.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part and reverse in part and remand for a determination of attorney's fees.

## I

Joseph was born in 1990 with a genetic defect known as cri du chat, cry of the cat, or 5p-syndrome. Deficits attributed to his disability include developmental delay, deficient cognitive ability, poor muscle tone, speech and language delay, gross and fine motor delay, difficulty in muscle training and coordination, difficulty assimilating toilet training, self-care difficulty, drooling and behavioral difficulties. Joseph has below average cognitive ability; his I.Q. is below 70. His family's primary language is Korean.

Joseph entered the Greater Anaheim public school district as a special day class student at age three. He attended Salk

---

[1]All references and citations to the Individuals with Disabilities Education Act refer to the statute as in force at the time period in dispute (2001-2002).

Elementary School within the Magnolia Elementary School District. A satisfactory individualized education plan was adopted and implemented for him. The Magnolia District annually reviewed the individualized education plan.

In March 2002, the Magnolia District conducted a triennial review. Members of the Anaheim District participated to facilitate Joseph's anticipated transition at the end of the school year. An audiology assessment was scheduled during this review. An audiologist administered a HEAR Kit test as part of the assessment. The audiologist could not reconcile inconsistent results because of a buildup of cerumen (earwax) in Joseph's ear canal. The District informed Joseph's mother that it was her obligation to remove the cerumen or have it removed by a medical professional before the assessment could be completed. The cerumen was not removed and the assessment was never completed.

A special education consultant, qualified to administer certain vision tests, conducted a vision assessment and found that Joseph's vision was not hindering his education. The Parks believe that Joseph is afflicted with double vision and optic nerve damage which the assessment failed to identify.

Based in part on the completed assessments, the Anaheim District and Special Education Local Plan Area recommended that Joseph be placed in a special education school for the 2001-2002 extended school year and the 2002-2003 school year. Joseph's parents contested the recommended placement and had Joseph attend a summer camp during the 2001-2002 extended school year. Joseph's mother requested new psychological, occupational therapy, physical therapy and speech and language assessments. The requested assessments took place over the summer and during the fall. There were no further attempts to administer the audiology and vision assessments.

In June 2002, the Parks requested a due process hearing naming Magnolia and Anaheim Districts as respondents.[2] Joseph attended a special day class at Lexington Junior High School pursuant to a confidential mediated interim agreement. Joseph's mother, along with her attorney and a translator, participated in October and November meetings to develop an individualized education plan, which the Anaheim District implemented in November 2002. The District conducted a functional behavior assessment and then created a proposed behavior intervention plan that it presented at a November individualized education plan meeting. The behavior intervention plan was not implemented because Joseph's mother contested the program's suitability.

A Hearing Officer of the California Special Education Hearing Office conducted a full hearing with both sides presenting witnesses and evidence. The Hearing Officer found: (1) the District conducted appropriate assessments and tested Joseph in all areas of suspected disability, (2) Joseph was denied a free and appropriate public education for the 2001-2002 extended school year because the District failed to establish that it made a clear written offer of placement at the Hope School for that period, (3) Joseph was denied a free and appropriate public education from the first week of September through November 6, 2002 because the individualized education plan had not been implemented, (4) the proposed individualized education plan, in place as of November 6, 2002, was appropriate but the District needed to add self-help goals for buttoning, zipping and toilet training, (5) the District must provide compensatory education services to Joseph's teachers for Joseph's benefit and (6) the District prevailed on every issue but the provision of a free and appropriate public education for extended school year 2001-2002 and September through November 2002 and compensatory services. The parties are in agreement on other issues.

---

[2]Appellants later settled with the Magnolia District.

Appellants brought suit in district court. The parties filed cross-motions for summary judgment and after a hearing the court entered final judgment. Appellants now challenge the following district court determinations: (1) Joseph was not prejudiced by any of the alleged violations of the Individuals with Disabilities Education Act's procedural safeguards, (2) the individualized education plan implemented in November 2002 does not deny Joseph a free and appropriate public education, (3) compensatory education services were properly awarded directly to the school teachers and (4) the District is not required to pay attorney's fees to Appellants for the costs of the due process hearing.

## II

The Individuals with Disabilities Education Act is satisfied if the State complies with the Act's procedures and an "individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits." *Amanda J. ex rel. Annette J. v. Clark County Sch. Dist.*, 267 F.3d 877, 890 (9th Cir. 2001) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 207 (1982)).

We accord the Hearing Officer's determinations due weight because they were thorough and careful: the hearing lasted over eight days, the Hearing Officer was engaged in the hearing and questioned the witnesses to ensure the record contained complete information and that he understood the testimony. The decision entered by the Hearing Officer contains a complete factual background as well as a discrete analysis supporting the ultimate conclusions. *See Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1499 (9th Cir. 1996).

## A

**[1]** Individuals with Disabilities Education Act relief is appropriate if procedural violations deprive Joseph of an edu-

cational opportunity (prejudice) or seriously infringe his parents' opportunity to participate in the formulation of the individualized education plan. *W.G. v. Bd. of Trs. of Target Range Sch. Dist., No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992) ("*Target Range*"). Appellants assert procedural violations which caused a denial of a free and appropriate public education. These include: (1) failure to undertake a medical examination for diagnostic or evaluation purposes leading to a completion of the audiology assessment, (2) failure to address the suspected vision disorder, (3) failure to consult or invite persons most knowledgeable about Joseph to assist in developing the individualized education plan, (4) development of the behavior intervention plan without considering the views of the individualized education plan team or Joseph's parents and (5) failure to assess Joseph using his primary language when it was feasible to do so.

**[2]** First, California Education Code Section 56320(f) requires a student be tested in all areas related to the suspected disability. Cal. Educ. Code Sec. 56320(f). The District undertook an audiology assessment and administered a HEAR Kit test. An excessive buildup of cerumen (earwax) prevented the audiologist from reconciling inconsistent results. The District fulfilled its duty by notifying Joseph's mother (who was present and later reminded) that it was her obligation to remove the cerumen or have it removed by a medical professional as a condition for test completion. There was no procedural violation.

**[3]** Second, Appellants allege the vision assessment was flawed because the special education consultant was unqualified to assess for double vision or optic nerve damage. The District is not required to assess double vision or optic nerve damage if it does not affect a child's educational needs. *See* Cal. Educ. Code Sec. 56320. Because the District's consultant found that Joseph's vision was not hindering his education, there was no procedural violation.

**[4]** Third, Appellants allege the District violated their procedural rights and denied Joseph an educational opportunity. The Appellants believe that failure to include and consider all available information from people knowledgeable about Joseph in the development of the individualized education plan violated the Act. Joseph has received that to which he is entitled. An individualized education plan has been developed for him as a result of his records, observations, assessments by qualified individuals and participation by his parents. *See* 20 U.S.C. § 1415(b)(1); Cal. Educ. Code Sec. 56320(g); *Target Range*, 960 F.2d at 1484; 34 C.F.R. § 300.533(a)(1). A qualified administrator conducted a thorough hearing to review the individual education plan and, after considering testimony from Joseph's mother and the child's personal physician, largely approved of the District's proposal but supplemented the plan with further goals. *See* 20 U.S.C. § 1414(d)(1)(B)(vi). There was no procedural violation.

**[5]** Fourth, the District did not violate the Individuals with Disabilities Education Act's procedures when it conducted a suitable functional behavioral assessment and subsequently proposed a behavior intervention plan. *See* 34 C.F.R. § 300.346. The individualized education plan team and Joseph's parents had an opportunity to discuss the plan when it was proposed. Joseph's mother exercised her rights by contesting the behavior intervention plan and then challenging the plan through the statutory procedures. There was no procedural violation.

**[6]** Fifth, Appellants allege the District's failure to assess Joseph in his primary language when it was feasible to do so was a procedural error that caused Joseph prejudice. The Individuals with Disabilities Education Act requires assessment materials be "provided and administered in the child's native language or other mode of communication, *unless it is clearly not feasible to do so*." 20 U.S.C. § 1414(b)(3)(A)(ii) (2000) (amended 2004) (emphasis added); *accord* Cal. Educ. Code Sec. 56320(b)(1); 34 C.F.R. § 300.532; Cal. Code Regs. tit. 5,

sec. 3023(a). Five assessments are at issue: speech and language, occupational therapy, physical therapy, vision and psychological. Joseph's mother consented to the assessment plan, which specified that the speech and language assessment was to be conducted in English. There was no procedural violation. The occupational therapy, physical therapy and vision assessments were nonverbal. There was no procedural violation. The psychological assessment was largely nonverbal. A Korean interpreter was present during the verbal portions of the assessment but direct verbal cues were not given in Korean. The Hearing Officer agreed with the psychologist that giving Korean cues would have disturbed the validity of the test; native language administration was not feasible. There was no procedural violation.[3]

## B

[7] Joseph has received a free and appropriate education if his instruction (1) addresses his unique needs, (2) provides adequate support services so he can take advantage of the educational opportunities and (3) is in accord with the individualized education program. *Capistrano Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg*, 59 F.3d 884, 893 (9th Cir. 1995) (citing *Rowley*, 458 U.S. at 188-89). The parties do not dispute Joseph's needs or that the instruction is in accord with the individualized education plan that has been developed for Joseph. Appellants contend that the District failed to provide adequate support services to allow Joseph to meet the proposed educational goals. The Hearing Officer carefully con-

---

[3]Even if we disagreed with the Hearing Officer and assumed without deciding that it was feasible (i.e., not detrimental to the assessment's validity) to give verbal cues in Korean, this limited portion of the psychological assessment would be the only evidence of procedural error. Such a procedural violation entitles Joseph to relief only if Appellants show it caused Joseph prejudice. *See Target Range*, 960 F.2d at 1484. Appellants offer no evidence that Joseph did not understand the cues given. There is no evidence that the results of the psychological assessment caused Joseph to be denied a suitable educational opportunity.

sidered testimony by the District and Appellants on the issue of related services. Though Appellants' witnesses testified that related therapy services could benefit Joseph, the District presented evidence that such services were not necessary for Joseph to reach the individualized education plan goals. The Hearing Officer's decision partially discredited Appellants' witnesses for using unreliable or invalid methods of testing. The Hearing Officer also agreed with the District that Joseph could achieve the goals of the individualized education plan through alternative communications, ongoing practice at home with his mother and ongoing adaptive physical education. Because we accord the Hearing Officer's findings due weight and the evidence does not conclusively demonstrate related therapy services are necessary to ensure Joseph receives "some educational benefit," we agree that there was no substantive violation of the Individuals with Disabilities Education Act. *Rowley*, 458 U.S. at 198-201.

## III

**[8]** Compensatory education services can be awarded as appropriate equitable relief. 20 U.S.C. § 1415(i)(2)(B)(iii) ("shall grant such relief as the court determines appropriate"); *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1496-97 (9th Cir. 1994). "Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the [Individuals with Disabilities Education Act]." *Parents of Student W.*, 31 F.3d at 1497. The courts have discretion on how to craft the relief and "[t]here is no obligation to provide a day-for-day compensation for time missed." *Id.* We review the Hearing Officer's and the district court's award of compensatory education services for abuse of discretion. *Id.* at 1496.

After balancing the parties' conduct, the Hearing Officer concluded that while it was appropriate for Joseph to receive compensatory education it would be speculative to award services directly to Joseph. The testimony was unclear whether

Joseph would benefit from direct compensatory education. The Hearing Officer decided to direct that the services be made available to Joseph's special education teacher in the amount of thirty minutes per week for the remainder of the 2002-2003 school year and to his Anaheim Union High School District teacher for the 2002-2003 extended school year. The Hearing Officer ordered that the services address the implementation of the individualized education plan's self-help goals and objectives. The district court affirmed the relief as ordered for Joseph's unique needs and the District's conduct.

**[9]** The award was designed to compensate Joseph for the District's violations by better training his teachers to meet Joseph's particular needs. The Individuals with Disabilities Education Act does not require compensatory education services to be awarded directly to the student. The Hearing Officer and the district court did not abuse their discretion when they awarded compensatory education services to Joseph in the form of individualized instruction for Joseph's teachers that addressed the implementation of the individualized education plan's self-help goals and objectives.

## IV

The district court abused its discretion in concluding that Appellants were not the prevailing party. *See Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist.*, 374 F.3d 857, 865 (9th Cir. 2004). Given the narrow discretion a district court has to deny fees in claims brought under the Individuals with Disabilities Education Act, the district court's decision ignored not only the letter of the law, but also the spirit and purpose of allowing attorney's fees in cases where parents have been forced to litigate for years against school districts to obtain all or even part of what the Individuals with Disabilities Education Act requires in the first place. Accordingly, we reverse the decision of the district court holding that Appellants were not the prevailing party, and we remand for

a determination of reasonable fees. *See Farrar v. Hobby*, 506 U.S. 103, 112-16 (1992) (outlining a two-step inquiry in determining attorney's fees).

[10] For the purpose of attorney's fee awards, a prevailing party is defined as "a party which 'succeed[s] on any significant issue in litigation which achieves *some* of the benefit the parties sought in bringing the suit.' " *Parents of Student W.*, 31 F.3d at 1498 (alteration in original) (emphasis added) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Appellants succeeded on several significant issues and achieved much of the benefit they sought in exercising their rights to a due process hearing and to bring a civil suit. The Hearing Officer determined, and the district court affirmed, that the District had denied Joseph a free and appropriate public education for the 2001-2002 extended school year and for September 2002 through November 2002. To remedy the denial of a free and appropriate public education, the Hearing Officer required the District to provide compensatory education, which was awarded to Joseph in the form of services provided by his classroom teacher for thirty minutes per week for the remainder of the 2002-2003 school year and extended school year. The district court affirmed the grant of this relief. In addition, the Hearing Officer found that although the goals and objectives the District had formulated were generally appropriate for Joseph, the District needed to supplement the proposed individualized education program for Joseph that was in place beginning in November 2002 by adding self-help goals for buttoning, zipping, and toilet training. Finally, the Hearing Officer agreed with Joseph's contention that the District had failed to offer Joseph an appropriate program at the Hope School, a special education school on a small campus that is separated from the other local schools, and that the Hope School was not Joseph's "least restrictive environment." *See* 20 U.S.C. § 1412(a)(5)(A) (conditioning state eligibility for federal funding on requirement that states educate disabled children with nondisabled children and remove disabled children "from the regular educational environment . . . only

when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily"). Accordingly, the Hearing Officer called for implementation of a new functional behavior assessment and behavioral intervention plan.

[11] Appellants' successes cannot be regarded as insufficient to render Appellants a "prevailing party," even acknowledging that the District also prevailed on some issues. A party is "prevailing" where it can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989), *quoted in Kletzelman v. Capistrano Unified Sch. Dist.*, 91 F.3d 68, 71 (9th Cir. 1996); *see also Tex. State Teachers Ass'n*, 489 U.S. at 792-93 ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties . . . ."). Appellants' successes satisfy this standard. As a result of Appellants' claim, the District was obligated to provide for consultative services by Joseph's special education teacher, to formulate self-help goals, to undertake a functional behavior assessment, and to implement a new behavioral intervention plan. Appellants' litigation successes resulted in a significant change in the District's legal obligations toward Joseph, which renders Appellants a prevailing party.

[12] That Appellants failed to prevail on all of their claims does not preclude a determination that they were the prevailing party. "[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained." *Hobby*, 506 U.S. at 111, 113-14 (holding that even an award of nominal damages confers prevailing party status and explaining that a "prevailing party" need only "obtain an enforceable judgment against the defendant from whom fees are sought"). Accordingly, a prevailing party need not succeed on all issues, but only on " '*any* significant issue.' " *Parents of Student W.*, 31 F.3d at 1498 (emphasis added) (quoting *Hensley*, 461 U.S. at 433).

Moreover, a prevailing party need not achieve all of the relief claimed, but merely "some of the benefit the parties sought in bringing the suit." *Id.* (internal quotation marks omitted); *see also Shapiro*, 374 F.3d at 865 ("[I]t is also true that a party may be accorded prevailing party status by being awarded 'some relief by the court[.]' " (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-04 (2001))); *Me. Sch. Admin. Dist. No. 35 v. Mr. & Mrs. R.,* 321 F.3d 9, 15 (1st Cir. 2003) (noting that a prevailing party must "succeed on the merits of a claim or defense," but that "a party may be considered 'prevailing' even without obtaining a favorable final judgment on all (or even the most crucial) of her claims"), *quoted in Shapiro*, 374 F.3d at 865. Here, Appellants have clearly prevailed in obtaining some of the relief they sought.

[13] Moreover, a prevailing party need not prevail on what may be considered the "central" issue of the case. In *Texas State Teachers Ass'n*, the Supreme Court found that the teachers' union was the prevailing party in its § 1983 claim challenging a school board policy, even though the union had not been granted relief on what was identified by a divided panel of the Fifth Circuit Court of Appeals as the "main thrust" of the action.[4] 489 U.S. at 787 (internal quotation marks omitted). Rejecting the "central issue" test for determining prevailing party status, the Court held that a party could be deemed "prevailing" even despite failure on a "central" issue as long as the party had prevailed on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Id.* at 791-93 (alteration in original) (internal quotation marks omitted). The Court noted that distinguishing between success on primary and secondary issues, or on central and tangential issues, is "essentially unhelpful" in defin-

---

[4]While *Texas State Teachers Association* concerned an action pursuant to 42 U.S.C. § 1983 seeking attorney's fees under § 1988, the Ninth Circuit has adopted its reasoning and result in Individuals with Disabilities Education Act cases. *See, e.g.*, *Kletzelman*, 91 F.3d at 71.

ing a prevailing party. Thus, whether Appellants' successes are on "central" or "primary" issues is irrelevant; the only salient question is whether the claims on which they prevailed are significant.

**[14]** Of course, despite the general rule that the degree of success does not bear on the threshold question of eligibility for an attorney's fees award, we have held that if success is insignificant, then a court may find that a party that succeeds on some claims is nonetheless not a prevailing party. Specifically, attorney's fees may be properly denied "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or de minimis." *Kletzelman*, 91 F.3d at 71 (internal quotation marks omitted). Appellants' successes, however, cannot be defined as technical or de minimis. De minimis judgments are those that confer no rights on the party —those that do not affect the obligations of the defendants toward the plaintiff. *See Hewitt v. Helms*, 482 U.S. 755, 761 (1987). The relief that Appellants obtained, in contrast, materially altered the District's obligations toward Joseph. Because Appellants chose to exercise their rights under the Individuals with Disabilities Education Act, the District was forced to reassess the objectives and plan for Joseph's education and to provide for compensatory education to remedy its failure to provide a free and appropriate public education during several months of his education.

**[15]** Nor are the issues on which Appellants prevailed merely technical; rather, they go to the very essence of the Individuals with Disabilities Education Act. The determination by the Hearing Officer and the district court that Joseph was denied a free and appropriate public education for the 2001-2002 extended school year and for September 2002 through November 2002—even setting aside the other issues on which Appellants prevailed—is the most significant of successes possible under the Individuals with Disabilities Education Act. At the heart of the Act are the requirements that all disabled children receive "a free appropriate public

education . . . designed to meet their unique needs and prepare them for further education, employment, and independent living," 20 U.S.C. § 1400(d)(1)(A), and that the education provided is effective in "ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities," *id.* § 1400(c)(1), (d)(4). It is impossible to reconcile the district court's conclusion that Joseph's success was "minor" with the goals and statutory framework of the Individuals with Disabilities Education Act. Nor is it possible to reconcile the district court's determination with our clear statement that "[a] district court's discretion to deny a request for attorneys' fees is narrow." *Kletzelman*, 91 F.3d at 70 (citing *Abu-Sahyun v. Palo Alto Unified Sch. Dist.*, 843 F.2d 1250, 1252 (9th Cir. 1988)). Thus, the district court abused its discretion in holding that Appellants were not the prevailing party, a decision that would serve not only to deny Joseph the relief he deserves, but also to violate the requirements and purpose of the Individuals with Disabilities Education Act.

[16] Accordingly, we hold that Appellants were the prevailing party, and we remand to the district court for a determination of reasonable fees. *See Hensley*, 461 U.S. at 433.

**AFFIRMED IN PART AND REVERSED IN PART; REMANDED FOR A DETERMINATION OF ATTORNEY'S FEES.**

---

BEEZER, Circuit Judge, concurring:

The Individuals with Disabilities Education Act provides that "[i]n any proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B).[1] In accor-

---

[1]The cited language is that of the statute in force at the time period in dispute (2001-2002). The language of the current attorneys' fee provision is almost identical. *See* 20 U.S.C. § 1415(i)(3)(B).

dance with the opinion of the court, I emphasize that "[i]t remains for the *district court* to determine what fee is 'reasonable.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added); *see also Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir. 1994) ("*Farrar* [*v. Hobby*, 506 U.S. 103 (1992)] teaches that district courts, in the exercise of their discretion, should consider the extent of success in calculating a fee award.")

Prevailing party status does not guarantee the receipt of attorney's fees. The district court first "consider[s] the amount and nature of damages awarded." *Farrar*, 506 U.S. at 115. "[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained[:] . . . the amount of damages awarded as compared to the amount sought." *Id.* at 114; *see also Hensley*, 461 U.S. at 439-40 ("We emphasize that the inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."). "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim . . . the only reasonable fee is usually no fee at all." *Farrar*, 506 U.S. at 115 (internal citation omitted). "When the plaintiff's success is purely technical or *de minimis*, no fees can be awarded." *Id.* at 117 (O'Connor, J., concurring). Where the prevailing party's success is partial or limited, it is within the discretion of the district court to award limited fees. *Hensley*, 461 U.S. at 436. "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.* Once the district court has "considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness . . . or multiplying the number of

hours reasonably expended by a reasonable hourly rate." *Farrar*, 506 U.S. at 115 (internal citations and quotation omitted).

If consideration of the amount and nature of damages awarded does not yield a clear fee determination, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The district court may then "adjust the fee upward or downward" on the basis of "other considerations" including results obtained. *Id.* at 434. Results obtained can be measured by examining: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.* Additional factors may include the time and labor required; the novelty and difficulty of the questions involved; the skill requisite to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the experience, reputation and ability of the attorneys; the undesirability of the case; the nature and length of the professional relationship with the client and awards in similar cases. *Id.* at 434 & n.9; *see also Morales v. City of San Rafael*, 96 F.3d 359, 363-64 & n.8 (9th Cir. 1996).

As the Supreme Court held in *Hensley v. Eckerhart*:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each conten-

tion raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. On remand the District Court should determine the proper amount of the attorney's fee award in light of these standards.

*Hensley*, 461 U.S. at 440.