PIERCE COUNTY, Petitioner/Appellant,

v.

UNITED STATES, By and Through the DEPARTMENT OF LABOR, and Raymond Donovan, its Secretary of Labor; The Department of Labor; and Raymond Donovan, individually and as Secretary of Labor, Respondents/Appellees.

No. 81–7810.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1982.

Decided Feb. 22, 1983.

Joseph F. Quinn, Tacoma, Wash., for petitioner/appellant.

E. Kathleen Shahan, Associate Sol., U.S. Dept. of Labor, Washington, D.C., for respondents/appellees.

Before KENNEDY and SKOPIL, Circuit Judges and JAMESON,* District Judge.

* The Honorable William Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

SKOPIL, Circuit Judge:

## INTRODUCTION

Pierce County, Washington ("the County") began receiving Comprehensive Employment and Training Act funds in 1975. After a 1977 investigation by the Department of Labor ("the Department"), a grant officer determined the County had improperly used some of the funds. The grant officer ordered repayment by the County to the Department.

At the County's request a hearing was held before an Administrative Law Judge ("ALJ") in 1980. The ALJ reversed in part and affirmed in part the findings and conclusions of the grant officer. The County requested review of the ALJ's rulings by the Secretary of Labor.

The Secretary did not modify or vacate the ALJ's decision and order and it became the final decision of the Secretary of Labor. The County appeals.

## FACTS AND PROCEEDINGS BELOW

To combat increasing unemployment, Congress passed the Emergency Jobs and Unemployment Assistance Act of 1974, 29 U.S.C. § 961 *et seq.* That Act added a new title, known as Title VI, to the Comprehensive Employment and Training Act of 1973, 29 U.S.C. § 801 *et seq.* ("CETA"). Regulations implementing the 1974 Act were published in the Federal Register on January 10, 1975 and codified at 29 C.F.R. § 99. The purpose of Title VI and the implementing regulations were to provide funds, in areas of high unemployment, for public service employment for persons who had been unemployed for at least 15 days.[1]

On January 8, 1975 a grant under Title VI was awarded to the County. The County agreed it would comply with the Act and regulations.

On March 18, 1975 the grant was modified and funding increased. The County again agreed that its program would comply with all statutory and regulatory requirements, and in addition certified that "no laid-off employee will be rehired until the required certification and explanation statement[s] have been received, reviewed and approved by the Regional Office, Manpower Administration, Region X, Seattle, Washington."

Job seekers initially completed a "service intake form." This provided a pool of potential hirees for the County. When an applicant was approved for hiring, a "client intake form" was prepared. From the contents of this form, the County determined the job seeker's eligibility for Title VI employment.

In September 1977 a Department of Labor grant officer conducted an investigation of the County Title VI program. A report of the investigation was prepared. On July 13, 1978, after the County had responded to the initial report, the grant officer issued final findings and determinations. It was determined that the County had improperly hired or rehired numerous persons. An order was issued directing the County to repay the government all funds disbursed to improperly hired or rehired employees.

The County disagreed with the determination and order. A hearing before an ALJ of the Department of Labor was requested. At the hearing, the County withdrew its appeal on all of the findings and determinations except those numbered 12 and 13.

Because the County failed to obtain federal approval of certain documents before rehiring, Determination 12 disallowed costs (wages and fringe benefits) for 39 persons who, following a lay-off, were rehired prior to the grant modification on March 18, 1975.[2] No finding or determination was

---

1. "[F]unds alloted under section 936 of this title to eligible [prime sponsors] may be used for * * * (2) providing employment for persons who have been unemployed for at least 15 days...." 29 U.S.C. § 964. "(a) A person who has been unemployed, ... for at least 15 days shall be eligible to participate in a pro-

gram or project in a Title VI area of excessively high unemployment...." 29 C.F.R. § 99.53 (1975).

2. "*Finding 12.*

(a) The Pierce County grantee certified in modification number 1 [the grant modification

made concerning employees hired after March 18, 1975. Determination 13 found the County had violated the regulations by inadequately documenting whether 26 rehirees had been unemployed the requisite 15 days before rehire.[3]

The ALJ reversed determination 12. He ruled the requirement that the County submit documents and obtain federal approval before hiring did not become effective until the March 18 grant modification. Accordingly, he reversed the grant officer's finding and determination 12 disallowing costs for the 39 participants who were hired before March 18. The ALJ also disallowed costs for six employees who were hired after that date.

The ALJ also modified finding and determination 13. He disagreed with the grant officer and concluded that the client intake form, rather than the service intake form, was the document upon which the County relied in determining applicant eligibility. Accordingly, the ALJ disallowed costs for employees who had filled out the client

intake form prior to the completion of 15 days of unemployment. He allowed costs in cases where no.client intake form was executed at any time, giving the County the benefit of the doubt and assuming that an informal determination was made that these particular employees were eligible with regard to the 15-day unemployment requirement. He disallowed costs for three such employees where evidence was presented which showed that they had in fact not been unemployed the requisite 15 days before rehire. In sum, after reviewing finding and determination 13, the ALJ disallowed costs for 21 rehires for rehiring in violation of the 15-day requirement.

Costs for a number of employees were disallowed for multiple reasons. In total, the ALJ disallowed costs for 19 employees totaling $159,394.[4] The County appeals.

## ISSUES

The issues presented for review by the County may be summarized as follows:

---

of March 18, 1975] to grant number 53–5–072–37 that the prime sponsor [the County] clearly recognizes its responsibility under the provisions of the Act and further certifies that no laid-off employee will be rehired until the required certification and explanation statements have been received, reviewed, and approved by the Regional Office, Manpower Administration, Region X, Seattle, Washington. The [initial investigation report] discloses that thirty-nine (39) of forty-five (45) rehires occurred prior to the modification execution date of March 18, 1975."

The County argued that the government's approval of the grant modification of March 18, 1975 was implicitly an approval of all rehires which occurred prior to that date or a waiver of the right to contest the rehires. The grant officer rejected the County's arguments and determined that the grant modification was neither an approval nor a waiver of rights. Costs in the amount of $373,962 for the 39 employees hired without proper Department approval were disallowed.

3. "Finding 13.

(a) The [initial investigation report] discloses that thirty-eight (38) of forty-five (45) rehires were either demonstrably unemployed less than the required [15] days prior to their dates of application for employment in the [Title VI] program, or duration of unemployment could not be determined because only month and . . . [year] (and not specific date) of last employ-

ment was provided in the application. In two other instances, no application was available; one other case featured no last date of employment whatsoever. The report cites violations of 29 C.F.R. 99.1(i), promulgated January 10, 1975, on a participant-by-participant basis."

The grant officer's finding 13 was that the County had violated the regulations by inadequately documenting whether 26 rehirees had been unemployed the requisite 15-days before rehired. Twenty-two of the 26 were ineligible for reasons discussed *supra* regarding finding and determination 12. The amount of disallowance for the four remaining ineligible rehires under finding and determination 13 was $42,332. The grant officer concluded that the service intake form, rather than the client intake form as claimed by the County, was the document relied on by the County for determining Title VI eligibility. Where the service intake form showed on its face that the applicant had not been unemployed for 15 days, or where length of employment could not be ascertained, the grant officer disallowed costs.

4. The disallowed costs actually exceed this amount. Costs for two of the six employees who were hired after March 18 without approval by the Department were not known at the time the ALJ disallowed them. They were disallowed in an amount to be subsequently determined.

1. Did the ALJ improperly disallow costs for six employees hired after the March 18 grant modification?
2. Should the ALJ's disallowance of costs for 18 employees who filled out a client intake form before the lapse of 15 days unemployment be reversed?
3. Is the Department authorized to demand repayment of disallowed costs?

## DISCUSSION

1. Post-March 18 hirees.

■ The ALJ disallowed costs for six employees hired after March 18 because they were hired without approval of the Department. The County contends that the ALJ could not disallow costs for anyone hired after March 18 because that issue was not decided by the grant officer and was not properly before the ALJ.

The Administrative Procedure Act provides that on review of the grant officer's initial determination "the agency has all the powers which it would have in making the initial decision except as it may limit the issues on notice or by rule." 5 U.S.C. § 557(b). The Department of Labor has so limited its scope of review of the grant officer's determinations:

> The request for hearing shall ... specifically state those provisions of the [grant officer's] determination upon which a hearing is requested. Those provisions of the determination not specified for hearing ... shall be considered resolved and not subject to further review.

20 C.F.R. § 676.88(f) (1979).[5]

The request for hearing by the County asks for review of "the final unfavorable determinations" of the grant officer. The grant officer made no unfavorable determination with respect to lack of Department approval for employees hired after March 18. He disallowed costs for 39 employees hired before that date but made no determination with respect to those hired later. The obvious inference is that those costs that were not disallowed were allowed. The question is thus whether the ALJ could disallow costs that were allowed by the grant officer.

The limitations of section 676.88(f) are inapplicable when issues not raised in request for review are tried by consent before the ALJ.

> *Amendments to conform to the evidence.* When issues not raised by the request for hearing, prehearing stipulation or prehearing order are tried by express or implied consent of the parties, they shall be treated in all respect [sic] as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made on motion of any party at any time; but failure to so amend does not affect the result of the hearing of these issues.

20 C.F.R. § 676.90 (1979). After reviewing the pleadings, stipulations, and transcripts of the proceedings before the ALJ we are unable to say that the County consented to a trial of the issue of post-March 18 hirees.

The prehearing documents, including the prehearing statements of the County and the Department as well as the stipulations, fail to mention Department approval or disapproval of post-March 18 hirees. The March 18 grant modification is discussed as it affects *pre*-March 18 hiring. Facts regarding some individual employees who were hired after March 18 were presented because costs for them were disallowed for multiple reasons. It cannot be said that these documents raise the issue to the extent it would be recognized by the parties as one to be litigated.[6]

The record reveals some implication of consent to a trial of the issue. A joint

---

5. The regulations which control the procedural aspects of this case were stipulated to by both parties in a Joint Stipulation submitted to the ALJ.

6. The grant officer's post-hiring brief does ask the ALJ to disallow costs for the six persons hired after March 18. That, of course, is irrelevant to whether the issue was tried by consent to the ALJ.

stipulation was filed containing the names of some people who were hired after March 18. Upon inquiry, the County's witness indicated that these people had not been certified. The ALJ stated "we are interested in the people who were hired before March 18. After March 18 is another ball game." This was insufficient to put either party on notice that the post-March 18 hirees were an issue. The issue of post-March 18 hirees was not properly before the ALJ. We reverse his disallowance of costs for them.[7]

2. Premature execution of client intake forms.

■ The ALJ disallowed costs for 18 employees who filled out the. client intake form before they were unemployed for the required 15 days. County authorities could not have made a determination that the rehired employee was eligible. The County argues that it "is inequitable to disallow the costs without the entry of a finding of fact that the participants were not unemployed for the fifteen (15) day period . . . *before starting work.*" (emphasis added).

We agree with the conclusions of the ALJ. The term "participation" is not defined by the Act. "Participant" is defined as one who receives services or takes part in activities under the provisions of the Act. *See* 29 C.F.R. § 94–4. Execution of the client intake form is the last step in the hiring process.[8] Receipt of a job, whether or not the person has actually begun to perform the work for which he or she was hired, qualifies one as a "participant" for purposes of the applicable regula-

tions. We conclude that the ALJ's disallowance of costs for the 18 employees who filled out the client intake forms prior to 15 days of unemployment was correct.[9]

3. Repayment of costs.

■ The County challenges the authority of the Department to demand repayment of disallowed costs. The issue is raised for the first time in supplemental briefs.

The Supreme Court has recognized that parties to an agency proceeding must raise "at a time appropriate under [the agency's] practice" all issues which it intends to contest on appeal. *United States v. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952). Under CETA regulations, the appropriate time to raise the issue of repayment sanctions would have been in the pleadings and prehearing documents prepared for the ALJ. *See* 20 C.F.R. § 676.88(f) (1979).

The County has waived its right to contest the issue of repayment sanctions by its failure to preserve the question for appeal.

### CONCLUSION

The disallowance of costs for the six employees hired after March 18, 1975 without Department approval is reversed. The issue was not properly before the ALJ and not tried by consent. The disallowance of costs for the 18 employees because they prematurely executed client intake forms is affirmed. Execution of the form made the applicant a "participant" for purposes of

---

7. We note that five of the six post-March 18 hirees were determined by the ALJ to be ineligible for multiple reasons. Reversal of the ALJ for disallowance of costs for lack of Department approval does not necessarily mean that costs are to be allowed.

8. Testimony by a witness for the County bears out this conclusion. Under questioning by counsel for the County, the Associate Director for Public Service Employment for Pierce County explained the use of the client intake form:

"Q. What's the purpose of that form and its use in the program at that time?

A. That is to determine the eligibility of the individual and that is done *at the time*

*that a selection is made,* and that is done to verify the eligibility of the individual prior to the time that he is to go to work . . . it's used to determine eligibility, and that's the last word, or last bit of information observed before the participant goes to work." (emphasis added).

9. The County's assertion that a finding of fact regarding the period of unemployment before actually starting to work misses the point. Because one is a participant upon execution of the client intake form, the date work is actually started is irrelevant.

the regulations under Title VI. The County has waived any objection to the repayment sanction by its failure to raise the issue below. We remand the case to the ALJ for a final determination of the amount to be repaid.

AFFIRMED in part, REVERSED in part and REMANDED.