Amanda FORD, a minor by and through her Guardian Ad Litem, Rodney FORD; Rodney Ford, Petitioners–Appellants,

v.

LONG BEACH UNIFIED SCHOOL DISTRICT; Board of Education of Long Beach Unified School District; Carl Cohn, Superintendent of Long Beach Unified School District; Marlyse Linder, Respondents–Appellees.

Nos. 00–56438, 00–56539.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 17, 2002.

Filed May 29, 2002.

Tania L. Whiteleather, Law Offices of Tania L. Whiteleather, Lakewood, CA, for the petitioners-appellants.

John E. Hayashida, Parker & Covert, Tustin, CA, for the respondents-appellees.

Before SCHROEDER, Chief Judge, McKEOWN, Circuit Judge and ZILLY,[1] District Judge.

## OPINION

SCHROEDER, Chief Judge.

This case arises under the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1400 et seq. It concerns a student, Amanda Ford, who is generally considered gifted, who scores very high on traditional, standardized IQ tests designed to measure intellectual ability, but who is doing very poorly in school. Amanda's parents brought this action challenging the District's assessment, required by 20 U.S.C. § 1414, and its conclusion that she is not disabled. The state's hearing officer upheld the assessment and the district court, in turn, upheld the hearing officer's decision.

The parents believe that Amanda is entitled to special education services under IDEA for a condition described as a "central auditory processing disorder." They rely on a California regulation that makes students eligible for services if they have a "severe discrepancy between intellectual ability and achievement." 5 Cal.Code Regs. tit. 5, § 3030(j). The district court held that the hearing officer correctly ruled the assessment that Amanda was not a learning disabled child was an adequate assessment under 20 U.S.C. § 1414.

## IQ Testing

The principal issue in this appeal is whether the California regulations as a general rule require a traditional IQ test to be administered to determine whether such a "severe discrepancy" exists.[2] In

---

1. The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

2. The regulations provide:

     A pupil shall qualify as an individual with exceptional needs, pursuant to Section 56026 of the Education Code, if the results of the assessment as required by Section 56320 demonstrate that the degree of the pupil's impairment as described in[subsections (a) through (j)] requires special education in one or more of the program options authorized by Section 56361 of the Education Code.
     . . . .
     (j) A pupil has a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, which may manifest itself in an impaired ability to listen, think, speak, read, write, spell, or do mathematical calculations, and has a severe discrepancy between intellectual ability and achievement in one of more of the academic areas specified in Section 56337(a) of the Education Code. For the purpose of Section 3030(j):
     . . . .
     (4) The decision as to whether or not a severe discrepancy exists shall be made by the individualized education program team, including assessment personnel in accordance with Section 56341(d), which takes into account all relevant material which is available on the pupil. No single score or product of scores, test or procedure shall be used as the sole criterion for the decisions of the individualized education program team as to the pupil's eligibility for special education. In determining the existence of a severe discrepancy, the individualized education program team shall use the following procedures:
       (A) When standardized tests are considered to be valid for a specific pupil, a severe discrepancy is demonstrated by: first, converting into common standard scores, using a mean of 100 and a standard deviation of 15, the achievement test score and the abili-

assessing Amanda's abilities and disabilities the District administered a number of standardized tests that measured both ability and achievement. The school psychologist administered the following six tests to Amanda: The Developmental Test of Visual Motor Integration (VMI), the Visual Aural Digit Span Test (VADS), the Test of Auditory Perceptual Skills (TAPS), the Wide Range Assessment of Memory and Learning (WRAML), the Matrix Analogies Test (MAT), and part of the Woodcock–Johnson, Revised (WJ–R). The WJ–R contains both an achievement test and an ability test; Amanda took only the achievement test. 12 Mental Measurements Yearbook (1995). The VMI tests the extent to which an individual can integrate their visual and motor abilities. 14 Mental Measurements Yearbook (2001). VADS tests children's short term memory recall ability. Elizabeth M. Koppitz, *The Visual–Aural Digit Span Test*, V Test Critiques 537 (Daniel J. Keyser & Richard C. Sweetland eds., 1986). TAPS tests a child's functioning in various areas of auditory perception. 13 Mental Measurements Yearbook (1998). The MAT is a nonverbal measure of intellectual ability. 10 Mental Measurements Yearbook (1989).

The District did not administer a traditional IQ test. Amanda's parents contend the regulations required it to do so. Contrary to Amanda's parents' position, however, the regulation does not require standardized "IQ" tests. It requires only "standardized tests," 5 Cal.Code Regs. § 3030(4)(A), and then only if they are considered valid for the particular student. If they are not considered valid for the particular student, alternative measures are to be spelled out in the assessment plan. The District administered six standardized tests to Amanda. The District thus complied with any literal requirement in the regulation that it use standardized tests if applicable for the particular student.

ty test score to be compared; second, computing the difference between these common standard scores; and third, comparing this computed difference to the standard criterion which is the product of 1.5 multiplied by the standard deviation of the distribution of computed differences of students taking these achievement and ability tests. A computed difference which equals or exceeds this standard criterion, adjusted by one standard error of measurement, the adjustment not to exceed 4 common standard score points, indicates a severe discrepancy when such discrepancy is corroborated by other assessment data which may include other tests, scales, instruments, observations and work samples, as appropriate.

(B) When standardized tests are considered to be invalid for a specific pupil, the discrepancy shall be measured by alternative means as specified on the assessment plan.

(C) If the standardized tests do not reveal a severe discrepancy as defined in subparagraphs (A) or (B) above, the individualized education program team may find that a severe discrepancy does exist, provided that the team documents in a written report that the severe discrepancy between ability and achievement exists as a result of a disorder in one or more of the basic psychological processes. The report shall include a statement of the area, the degree, and the basis and method used in determining the discrepancy. The report shall contain information considered by the team which shall include, but not be limited to:

1. Data obtained from standardized assessment instruments;

2. Information provided by the parent;

3. Information provided by the pupil's present teacher;

4. Evidence of the pupil's performance in the regular and/or special education classroom obtained from observations, work samples, and group test scores;

5. Consideration of the pupil's age, particularly for young children; and

6. Any additional relevant information.

(5) The discrepancy shall not be primarily the result of limited school experience or poor school attendance.

5 C.C.R. § 3030(j) (1983).

Moreover, in Amanda's assessment plan, the District explained to her parents that it used alternative measures to evaluate intellectual ability "rather than relying on traditional standardized IQ tests." The assessment plan states that "these alternative measures may include interviews, observations, parent-teacher reports, a review of records and *tests* of specific skills." (Emphasis added.) The parents signed and approved that assessment plan.

Amanda's parents do not provide any empirical grounds on which to base a challenge to the District's decision not to use traditional IQ tests. Such tests have come under increasing criticism in recent years because of cultural bias and other factors tending to diminish their reliability and they have undergone a number of successful legal challenges. *See, e.g., Larry P. v. Riles,* 793 F.2d 969, 975–76 (9th Cir.1986) (discussing racial bias in IQ tests and upholding district court's order enjoining use of such tests). For all of these reasons we conclude that the assessment was not rendered inadequate by the District's decision not to rely on traditional IQ tests.

### Other Assessment Challenges

The parents' other challenges to the adequacy of Amanda's assessment can be dealt with summarily.

■ The parents contend that the assessment was inadequate because it did not include classroom observation of Amanda by someone other than her regular classroom teacher, as required by 34 C.F.R. § 300.542. However, we have held that not all procedural flaws require a finding of denial of IDEA rights. *W.G. v. Bd. of Trustees of Target Range Sch. Dist.,* 960 F.2d 1479, 1484 (9th Cir.1992); *Amanda J. v. Clark County Sch. Dist.,* 267 F.3d 877, 892 (9th Cir.2001). Amanda's assessment included the classroom observations of three of her then-current teachers. Their observations were corroborated by the classroom observations of her former teachers who testified at the administrative hearing. The record thus demonstrates that any violation of the regulation did not affect the validity of the assessment.

In addition, the parents assert that the assessment did not address Amanda's social and emotional functioning, as required by 34 C.F.R. § 300.542. The assessment discusses Amanda's emotional state and her social behavior. The regulation was not violated.

The parents also argue that the assessment failed to include all of the information required by 34 C.F.R. § 300.543, particularly the basis for the evaluator's conclusion that Amanda did not have a specific learning disability and the evaluator's assessment of the relationship between Amanda's behavior and her academic and social functioning. The assessment report, however, includes the results of all the tests the evaluator performed, and her conclusion, on the basis of those test results, that Amanda did not have a learning disability. The assessment report also contains the evaluator's opinions about why Amanda was doing poorly in school.

■ Lastly, the parents find fault with the assessment's failure to specifically mention the role, if any, played by environmental, cultural, or economic disadvantage. The relevant regulation requires that the team evaluating the student's need for services state their determination "concerning the effects of environmental, cultural, or economic disadvantage." 34 C.F.R. § 300.543. However, there is no allegation that Amanda suffers from any kind of environmental, cultural, or economic disadvantage that would be relevant to assessing her abilities. Therefore, this lapse in the assessment report does not render the assessment report inadequate.

We affirm the district court's holding that the assessment was adequate.

### Right to Reimbursement

■ If the District's assessment was adequate, the parents do not have a right to be reimbursed for an independent evaluation they procured. 34 C.F.R. § 300.502(b). We therefore also affirm the district court's holding that the parents are not entitled to reimbursement for the independent evaluation.

### Due Process

The parents contend that they were denied their due process rights at the administrative hearing because the hearing officer was not qualified, because she reformulated the issues for decision, and because she allowed a witness to testify via television.

The parents do not present any evidence that the hearing officer lacked an understanding of special education law or administrative procedures. Rather, the parents contend that the hearing officer must have been unqualified because she made rulings with which they disagree. This challenge has no merit in the absence of any colorable claim of procedural irregularity or substantive deficiency in the proceedings or the decision.

The parents argue that the hearing officer denied their right to present issues at the hearing when, in her written decision, she formulated the issues they presented in words different from the words the parents had used in presenting those issues. Despite her reorganization and restatement of the issues, the hearing officer addressed the merits of all the issues presented by the parents, except for one over which she lacked jurisdiction.

The parents also find fault with the hearing officer's decision to allow one witness, the school district psychologist, to provide her second day of testimony via television to accommodate a disability. *See* Cal. Educ.Code § 56505(e)(3)(providing right to compel, cross-examine, and confront witnesses); 34 C.F.R. § 300.509(a)(2) (same). California law permits witness testimony to be taken by television, 5 Cal.Code Regs. tit. 5 § 3082(g) (2000), and allowing this accommodation did not inhibit the parents' ability to present their case.

We affirm the district court's holding that the parents' due process rights were not infringed.

### Court–Ordered Assessment

■ The parents challenge the district court's order compelling them to pay the cost of an independent assessment ordered by the district court, arguing that the assessment did not comply with IDEA's or California's assessment requirements. The assessment ordered by the district court was not ordered pursuant to either the IDEA or California special education law; rather, it was intended to aid the district court in making its decision in this matter, pursuant to applicable rules governing federal courts. The order requiring the parents to pay for that assessment was within the district court's authority under Federal Rule of Evidence 706. *See* Fed.R.Evid. 706(permitting court to appoint expert witnesses and to order parties to pay cost of expert's compensation).

AFFIRMED.

Opinion by Chief Judge SCHROEDER.