**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| M.C., by and through his guardian ad litem M.N.; M. N., *Plaintiffs-Appellants*, v. ANTELOPE VALLEY UNION HIGH SCHOOL DISTRICT, *Defendant-Appellee.* | No. 14-56344 D.C. No. 2:13-cv-01452-DMG-MRW AMENDED OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted August 2, 2016
Pasadena, California

Filed March 27, 2017
Amended May 30, 2017

Before: Stephen Reinhardt, Alex Kozinski,
and Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Kozinski

## SUMMARY[*]

### Individuals with Disabilities Education Act

The panel filed an amended opinion reversing the district court's judgment in favor of the defendant school district and remanding for further proceedings in an action brought by a student and his parent under the Individuals with Disabilities Education Act.

The panel held that the district court erred in deferring to the administrative law judge's findings after a due process hearing because the ALJ was not thorough and careful.

The panel held that the plaintiffs did not waive a claim that the school district violated the IDEA's procedural requirements by failing to adequately document the services provided by a teacher of the visually impaired. The plaintiffs did not object to the omission of this claim from the ALJ's restatement of issues, but they were not aware until later that the school district had unilaterally changed the student's individualized educational program (IEP). The panel held that the school district's presentation of evidence on the claim vitiated any waiver on plaintiffs' part.

The panel held that, absent the parent's consent, the school district was bound by the IEP as written, and the unilateral amendment was a per se procedural violation of the IDEA because it vitiated the parent's right to participate at every step of the IEP drafting process. There was an

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

additional procedural violation because the IEP as initially drafted did not provide the parent with an accurate offer of the services provided to the student by a teacher of the visually impaired.  The panel held that the parent suffered procedural harm by not being apprised of the actual status of the services being provided, causing her to incur legal fees in attempting to protect that right.

The panel held that the school district's failure to specify that assistive technology devices that were provided to the student infringed the parent's opportunity to participate in the IEP process and denied the student a free appropriate public education.

The panel held that the school district's failure to respond to the plaintiffs' due process complaint violated the IDEA and due process.  The panel remanded for a determination of the prejudice the parent suffered as a result of the school district's failure to respond and the award of appropriate compensation therefor.

Regarding substantive violations of the IDEA, the panel held that, due to the procedural violation regarding services provided by a teacher of the visually impaired, the burden of proof shifted to the school district to show that the services the student actually received were substantively reasonable. The panel remanded so that the school district could have an opportunity to make such a showing before the district court.

The plaintiffs claimed that the school district denied the student a free appropriate public education by failing to develop measurable goals in all areas of need and failing to provide adequate orientation and mobility services, as well as adequate social skills instruction.  The panel remanded so

that the district court could consider these claims in light of *Endrew F. v. Douglas Cty. Sch. Dist.*, 137 S. Ct. 988 (2017), which clarified that to meet its substantive obligation under the IDEA, a school district must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances.

## COUNSEL

Christian M. Knox (argued), Colleen A. Snyder Holcomb, Daniel R. Shaw, and F. Richard Ruderman, Ruderman & Knox LLP, Sacramento, California, for Plaintiffs-Appellants.

David R. Mishook and Christopher J. Fernandes, Fagen Friedman & Fulfrost LLP, Oakland, California; for Defendant-Appellee.

Jennifer E. Nix and Carl D. Corbin, School and College of Legal Services of California, Santa Rosa, California; Keith J. Bray and D. Michael Ambrose, California School Boards Association/Education Legal Alliance, West Sacramento, California; Ronald D. Wenkart, Orange County Department of Education, Costa Mesa, California; for Amici Curiae California School Boards Association and Education Legal Alliance.

Barrett K. Green and Daniel L. Gonzalez, Littler Mendelson PC, Los Angeles, California, for Amicus Curiae William S. Hart Union High School District.

## OPINION

KOZINSKI, Circuit Judge:

The Individuals with Disabilities Education Act ("IDEA") guarantees children with disabilities a free appropriate public education ("FAPE").  20 U.S.C. § 1400(d)(1)(A).  We consider the interplay between the IDEA's procedural and substantive safeguards.

## BACKGROUND

M.C. suffers from Norrie Disease, a genetic disorder that renders him blind.  He also has a host of other deficits that cause him developmental delays in all academic areas. M.C.'s mother, M.N., met with several school administrators and instructors to discuss M.C.'s educational challenges and draft an individualized educational program ("IEP").  At the conclusion of this meeting, she signed an IEP document and "authorize[d] the goals and services but [did] not agree it provides a FAPE."

M.N. then filed a due process complaint alleging that the Antelope Valley Union High School District (the "District") committed procedural and substantive violations of the IDEA. The due process hearing took place before an Administrative Law Judge who denied all of M.C.'s claims and the district court affirmed.

## DISCUSSION

The IDEA's "primary goal is 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and

related services . . . .'" *J.L.* v. *Mercer Island Sch. Dist.*, 592 F.3d 938, 947 (9th Cir. 2010) (quoting 20 U.S.C. § 1400(d)(1)(A)). A FAPE must be "tailored to the unique needs of the handicapped child by means of an 'individualized educational program' (IEP)." *Hendrick Hudson Cent. Sch. Dist. Bd. of Educ.* v. *Rowley*, 458 U.S. 176, 181 (1982) (quoting 20 U.S.C. § 1401(18)). An IEP must contain, among other things, "a statement of the child's present levels of academic achievement," "a statement of measurable annual goals" and "a statement of the special education and related services . . . to be provided to the child." 20 U.S.C. § 1414(d)(1)(A)(i). When formulating an IEP, a school district "must comply both procedurally and substantively with the IDEA," *M.L.* v. *Fed. Way Sch. Dist.*, 394 F.3d 634, 644 (9th Cir. 2005) (citing *Rowley*, 458 U.S. at 206–07), so that the process "will be informed not only by the expertise of school officials, but also by the input of the child's parents or guardians," *Endrew F.* v. *Douglas Cty. Sch. Dist.*, 580 U.S. __, slip op. at 11 (Mar. 22, 2017).

## I. STANDARD OF REVIEW

Judicial review in IDEA cases "differs substantially from judicial review of other agency actions, in which courts are generally confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist.* v. *Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993). We review whether the state has provided a FAPE de novo. *Union Sch. Dist.* v. *Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994). We can accord some deference to the ALJ's factual findings, but only where they are "thorough and careful," and "the extent of deference to be given is within our discretion." *Id.* (citations omitted).

The district court accorded the ALJ's findings substantial deference because the ALJ "questioned witnesses during a three-day hearing" and "wrote a 21-page opinion that reviewed the qualifications of witnesses and culled relevant details from the record." But neither the duration of the hearing, nor the ALJ's active involvement, nor the length of the ALJ's opinion can ensure that the ALJ was "thorough and careful."[1] *J.W. ex rel. J.E.W.* v. *Fresno Unified Sch. Dist.*, 626 F.3d 431, 440 (9th Cir. 2010). And, in this case, the ALJ was neither thorough nor careful. As plaintiffs point out, the ALJ didn't address all issues and disregarded some of the evidence presented at the hearing. Even the district court recognized that the ALJ's analysis "is not entirely satisfying." Accordingly, the district court erred in deferring to the ALJ's findings.

## II. PROCEDURAL VIOLATIONS

The IDEA contains numerous procedural safeguards that are designed to protect the rights of disabled children and their parents. *See* 20 U.S.C. § 1415. These safeguards are a central feature of the IDEA process, not a mere afterthought:

---

[1] In *Timothy O.* v. *Paso Robles Unified Sch. Dist.*, for example, we reversed a lengthy ALJ opinion with detailed findings that were unsupported by the record. 822 F.3d 1105, 1117, 1123 (9th Cir. 2016). The district court nevertheless had deferred to the ALJ's findings, apparently impressed by the length and superficial plausibility of the ALJ's opinion. *Id.* at Dist. Ct. Dkt. No. 78. Such blind deference is not appropriate. Rather, the district judge must actually examine the record to determine whether it supports the ALJ's opinion. *See, e.g.*, *J.G. ex rel. Jimenez* v. *Baldwin Park Unified Sch. Dist.*, 78 F. Supp. 3d 1268, 1281–82 (C.D. Cal. 2015) (Olguin, J.) (according "substantially less deference" where "the ALJ's decision ignore[d] and mischaracterize[d] key evidence").

"Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process as it did upon the measurement of the resulting IEP against a substantive standard." *Rowley*, 458 U.S. at 205. Because disabled children and their parents are generally not represented by counsel during the IEP process, procedural errors at that stage are particularly likely to be prejudicial and cause the loss of educational benefits.

Therefore, compliance with the IDEA's procedural safeguards "is essential to ensuring that every eligible child receives a FAPE, and those procedures which provide for meaningful parent participation are particularly important." *Amanda J.* v. *Clark Cty. Sch. Dist.*, 267 F.3d 877, 891 (9th Cir. 2001). "Procedural violations that interfere with parental participation in the IEP formulation process undermine the very essence of the IDEA." *Id.* at 892.

Plaintiffs allege that the District violated the IDEA by (1) failing to adequately document the services provided by a teacher of the visually impaired ("TVI"), (2) failing to specify the assistive technology ("AT") devices provided and (3) failing to file a response to the due process complaint.

## A. Failure to Adequately Document TVI Services

Plaintiffs claim that the District didn't provide a "'written record of reasonable expectations' to hold the District accountable for the provision of vision services to M.C." (quoting *Amanda J.*, 267 F.3d at 891). A brief history of the District's shifting offer of TVI services is necessary: The IEP document signed by M.N. and the District included an offer of 240 minutes of TVI services per *month*. According to the

District, it realized a week later this was a mistake. But the District did nothing to notify M.N. More than a month later, the District purported to unilaterally amend the IEP by changing the offer of TVI services to 240 minutes per *week*. The District didn't send M.N. a copy of the revised IEP or otherwise notify her of this change. In fact, she didn't learn of it until the first day of the due process hearing, a month later. Moreover, at the hearing, District witnesses testified that the District offered M.C. 300 minutes of TVI services per week.

Plaintiffs claim that the District's failure to accurately document the offer of TVI services denied M.C. a FAPE by precluding M.N. from meaningfully participating in the IEP process. Before discussing the merits of this claim we must address the District's argument that the claim is waived.

**1.** The district judge recognized that plaintiffs' due process complaint "arguably encompassed Plaintiffs' argument that the provision of TVI services was inadequate." The judge nevertheless found that plaintiffs "waived any argument that the District's failure to specify the frequency of TVI services in the August 2, 2012 IEP resulted in an actual denial of an educational benefit to M.C." because the due process complaint was superseded by the ALJ's restatement of issues, which omitted the adequacy of TVI services.

The district judge held that plaintiffs waived the issue by failing to object to this omission.[2] But plaintiffs weren't

---

[2] It is apparently common practice in IDEA cases for ALJs to restate and reorganize the issues presented by the parties. *See J.W.*, 626 F.3d at 442; *Ford ex rel. Ford* v. *Long Beach Unified Sch. Dist.*, 291 F.3d 1086,

aware that the District had unilaterally changed the IEP until after the ALJ had restated the issues, so they could hardly have raised that as a procedural violation. And it turns out that the amendment didn't even provide an accurate statement of the services that M.C. was offered. District witnesses later testified that the District intended to offer M.C. 300 minutes of TVI services per week.

The district judge purported to understand the difficult position that plaintiffs were in due to this sequence of events but still found that "there [was] no indication in the record that Plaintiffs ever sought during the administrative hearing to amend the issues to be addressed to include the District's failure to provide M.C. with adequate TVI services." But we generally treat issues as if they were raised in the complaint if they are tried by consent. Rule 15 of the Federal Rules of Civil Procedure provides that an issue "tried by the parties' express or implied consent . . . must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2); *see* 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1491 (3d ed.). While we haven't previously recognized this practice in IDEA cases, it's often been applied in a variety of other agency adjudications: before the IRS, *Lysek* v. *C.I.R.*, 583 F.2d 1088, 1091–92 (9th Cir. 1978), the Department of Labor, 20 C.F.R. § 901.40; *Pierce County* v. *U.S. ex rel. Dep't of Labor*, 699 F.2d 1001, 1004 (9th Cir. 1983), and the Patent and Trademark Office,

---

1090 (9th Cir. 2002). We question the wisdom of such a procedure where the parents are represented by counsel and the complaint states the issues intelligibly, as was the case here. A party bringing a due process complaint is entitled to frame the issues it wishes to present and should not be put in the difficult position of contradicting the presiding official who will soon be the trier of fact. In such circumstances, failure to object will not be deemed a waiver of any claim fairly encompassed in the complaint.

US PTO Stip. § 507.03.   We see no reason IDEA cases should be treated differently.

Both sides presented extensive evidence regarding the District's offer of TVI services.  Multiple witnesses testified as to the initial offer of 240 minutes per month, the District's purported secret amendment of 240 minutes per week, and the District's actual offer of 300 minutes per week as presented at the hearing.   The District's presentation of evidence on this point vitiated any waiver on M.N.'s part. Accordingly, we hold that plaintiffs' claim that the District committed a procedural violation of the IDEA by failing to adequately document its offer of TVI services isn't waived.[3]

**2.**   The IEP is a "formal, written offer [that] creates a clear record that will do much to eliminate troublesome factual disputes . . . about when placements were offered, what placements were offered, and what additional education assistance was offered to supplement a placement, if any." *Union Sch. Dist.*, 15 F.3d at 1526.  The IEP must specify "the anticipated frequency, location, and duration of [education] services." 20 U.S.C § 1414(d)(1)(A)(i)(VII). Such "a formal, specific offer from a school district will greatly assist parents in 'present[ing] complaints with respect to any matter relating to the . . . educational placement of the child.'"  *Union Sch. Dist.*, 15 F.3d at 1526 (quoting 20 U.S.C. § 1415(b)(1)(E)).

---

[3] The District also makes a separate waiver argument:  It claims that plaintiffs waived their objection to the admission of the amendment into evidence.  While plaintiffs did waive their objection to the admissibility of the amendment, for the reasons described above, *see supra* at 9–11, the waiver does not extend to its legal significance.

The district judge agreed with the ALJ's finding "that the September 17, 2012 Amendment merely corrected an unintentional error in the August 2, 2012 IEP." We fail to see how this can be so. An IEP, like a contract, may not be changed unilaterally. It embodies a binding commitment and provides notice to both parties as to what services will be provided to the student during the period covered by the IEP. If the District discovered that the IEP did not reflect its understanding of the parties' agreement, it was required to notify M.N. and seek her consent for any amendment. *See* 20 U.S.C. § 1414(d)(3)(D), (F) (discussing amendments to the IEP). Absent such consent, the District was bound by the IEP as written unless it sought to re-open the IEP process and proposed a different IEP.

Because the District did neither of these things, the IEP actually in force at the time of the hearing was that signed by the parties, not that presented by the District as the amended IEP. Allowing the District to change the IEP unilaterally undermines its function of giving notice of the services the school district has agreed to provide and measuring the student's progress toward the goals outlined in the IEP. Moreover, any such unilateral amendment is a per se procedural violation of the IDEA because it vitiates the parents' right to participate at every step of the IEP drafting process.[4]

---

[4] The District's purported amendment was also improper for a separate reason: The District presented no evidence supporting its claim that the parties agreed to 240 minutes of TVI services per week when the IEP was drafted. Indeed, it is unclear how the District came up with this figure given that its witnesses at the hearing testified that M.C. was actually provided 300 minutes of TVI services per week. Nevertheless, the ALJ and the district court accepted this as true. However, a party's mere allegations are not proof.

Finally, we must express our disapproval of the District's conduct with respect to this issue. The District discovered what it believed was a mistake in the IEP just a week after it was signed, yet failed to bring this problem to M.N.'s attention until weeks later, on the first day of the due process hearing. Even then, its lawyers didn't identify the purported amendment but rather buried it in a document production, leaving it to plaintiffs' counsel to stumble upon it. Had the District raised the issue immediately upon discovering the suspected error, it's entirely possible that M.N. would have found the amount of TVI services to be satisfactory. Plaintiffs might have avoided hiring a lawyer and taking the case to a due process hearing—saving attorneys' fees on both sides and perhaps disruption to M.C.'s education. We find no justification in the record for the District's failure to be forthright on this point and the District has offered none in its brief or when questioned about it at oral argument.**[5]**

Because the District denied M.N. an opportunity to participate in the IEP drafting process by unilaterally revising the IEP, and because the IEP as initially drafted didn't provide M.N. with an accurate offer of the TVI services provided to M.C., the District committed two procedural violations of the IDEA. *Union Sch. Dist.*, 15 F.3d at 1526. The district court nevertheless found that M.C. wasn't denied a FAPE, reasoning that "[a] procedural violation denies a child a FAPE when the violation seriously infringe[s] the parents' opportunity to participate *in the IEP formation*

---

**[5]** On remand, the district court shall determine whether this course of conduct was a deliberate attempt to mislead M.N. or mere bungling on the part of the District and its lawyers. If the district court determines that the former is the case, it shall impose a sanction sufficiently severe to deter any future misconduct.

*process*." (emphasis in original) (internal quotation and citation omitted). But, as explained above, M.N. *was* denied an opportunity to participate in the IEP drafting process. Moreover, in enacting the IDEA, Congress was as concerned with parental participation in the *enforcement* of the IEP as it was in its *formation*. *See Rowley*, 458 U.S. at 205 (discussing Congress's intent to "giv[e] parents and guardians a large measure of participation *at every stage of the administrative process*" (emphasis added)). Under the IDEA, parental participation doesn't end when the parent signs the IEP. Parents must be able to use the IEP to monitor and enforce the services that their child is to receive. When a parent is unaware of the services offered to the student—and, therefore, can't monitor how these services are provided—a FAPE has been denied, whether or not the parent had ample opportunity to participate in the formulation of the IEP.

Whether, and to what extent, M.C. was prejudiced by these procedural improprieties is a more difficult question. Assuming that M.C. was receiving 300 minutes of TVI services per week, as the District apparently intended to offer, M.C. may not have suffered any substantive harm. M.N. nevertheless suffered procedural harm by not being apprised of the actual status of the services being provided, causing her to incur legal fees in attempting to protect that right. Because any TVI services provided beyond what was specified in the written IEP would have been gratuitous, M.N. could not be sure that the District would continue to provide them. With only 240 minutes per month (about an hour a week) specified in the IEP, the District was entitled to cut back these services to that level. M.N. was amply justified in seeking the aid of counsel to clarify the amount of services provided. Incurring unnecessary legal fees is, of course, a form of prejudice that denies a student and his parents an educational benefit. *See*

*Parents on Behalf of Student* v. *Julian Charter Sch.*, OAH No. 2012100933, at 2 (Jan. 17, 2013) (order denying motion to dismiss).  The fact that the District could have avoided the harm by promptly notifying M.N. that it was agreeing to provide far more services than specified in the IEP only makes matters worse.

## B.  Failure to Identify the AT Devices Provided

When a student requires "a particular device or service" California requires that the IEP "include a statement to that effect."  Cal. Educ. Code § 56341.1(b)(5), (c).  M.C.'s IEP initially indicated that M.C. didn't require AT devices or services.  The District conceded that this was erroneous and issued an amendment that changed the checkbox for AT devices from "no" to "yes."  But neither the IEP nor the amendment specified the devices that M.C. required.

The district judge recognized that "the language of [section 56341.1] requires the District to identify the particular types of AT devices and services to be provided to M.C."  But the judge found that this procedural violation didn't "*seriously* infringe[] M.N.'s opportunity to participate in the IEP *formulation* process."  As we've made clear, however, parents must be able to participate in both the formulation and enforcement of the IEP.  *See supra* at 13–14.  Even if M.N. was able to participate in the IEP's formulation, the District's failure to identify the AT devices that M.C. required rendered the IEP useless as a blueprint for enforcement.

The district judge noted that the IEP team discussed "at least some of the AT services and equipment to be provided to M.C." at the IEP meeting.  But a discussion does not

amount to an offer. M.N. could force the District to provide only those services and devices listed in the IEP, not those discussed at the IEP meeting but left out of the IEP document. *See Union Sch. Dist.*, 15 F.3d at 1526 (requiring a "formal, written offer"). Indeed, items discussed at the IEP meeting but not included in the IEP document could be deemed to have been omitted on purpose.

Nor was this a case where "everyone involved in the individualized education team—including [the student's] parents—knew of the amounts [of services]" that were offered. *J.L.*, 592 F.3d at 953. M.N. testified at the due process hearing that she didn't know which AT devices were offered to M.C. M.C.'s TVI services provider testified that M.C. received a laptop, a Book Port, software developed for the visually impaired, a screen reading program, a talking calculator and an Eye-Pal Solo. But M.N. was only aware that M.C. received a laptop, braille machine, braille calendar and a Book Port. M.N. also testified that the laptop didn't have the software that M.C. needed, but she didn't know which software was missing. Because the IEP didn't specify which AT devices were being offered, M.N. had no way of confirming whether they were actually being provided to M.C. The District's failure to specify the AT devices that were provided to M.C. thus infringed M.N.'s opportunity to participate in the IEP process and denied M.C. a FAPE. *Id.* at 953.

## C.  Failure to Respond to the Complaint

The IDEA requires a school district to respond to a parent's due process complaint within 10 days. 20 U.S.C. §§ 1415(c)(2)(B)(i)(I) & 1415(c)(2)(B)(ii). The District failed to do this and plaintiffs argue that this violated the

IDEA.  To be clear, the District didn't just miss a deadline: It failed to *ever* respond to the complaint.  The district court found that the failure to respond didn't infringe M.N.'s opportunity to participate in the IEP formulation process and, therefore, wasn't a denial of a FAPE.  But this misses the mark.  The District's failure to respond may not have denied plaintiffs a FAPE but it still violated the IDEA and due process.

Like an answer to a complaint, a response serves an important dual purpose:  It gives notice of the issues in dispute and binds the answering party to a position.  *See, e.g.*, *United States* v. *All Assets Held at Bank Julius Baer & Co.*, 959 F. Supp. 2d 81, 116 n.21 (D.D.C. 2013) (noting that "one function of an answer" is to identify "points of disagreement"); *Lopez* v. *U.S. Fidelity & Guaranty Co.*, 18 F.R.D. 59, 61 (D. Alaska 1955) (explaining that the purpose of rules governing answers to a complaint "is to prevent surprise").  Failure to file a response puts the opposing party at a serious disadvantage in preparing for the hearing, as it must guess what defenses the opposing party will raise.  The problem is particularly severe in IDEA cases because there is no discovery.

When a school district fails to file a timely response, the ALJ must not go forward with the hearing.  Rather, it must order a response and shift the cost of the delay to the school district, regardless of who is ultimately the prevailing party.[6]

---

[6] Even if a motion to compel a response isn't brought, the ALJ should raise the issue sua sponte at the pre-hearing conference.  This is imperative in IDEA cases where parents often proceed without the aid of counsel and may not be aware that the IDEA requires a school district to respond to the

We remand for a determination of the prejudice M.N. suffered as a result of the District's failure to respond and the award of appropriate compensation therefor.[7]

## III.    SUBSTANTIVE VIOLATIONS

In order for M.C. to have received a FAPE, the IEP must have "(1) addresse[d] [his] unique needs, (2) provide[d] adequate support services so [M.C.] can take advantage of the educational opportunities, and (3) [been] in accord with the individualized education program." *Capistrano Unified Sch. Dist.* v. *Wartenberg*, 59 F.3d 884, 893 (9th Cir. 1995) (citing *Rowley*, 458 U.S. at 188–89).

**1.**  Plaintiffs argue that the District denied M.C. a FAPE by providing him with less than 300 minutes of TVI services per week.  The District doesn't address the substance of plaintiffs' argument, arguing that the issue was waived.  For the reasons explained above, plaintiffs haven't waived this issue. *See supra* at 9–11.

Both the ALJ and district judge placed the burden on M.N. to show that the services provided to M.C. were inadequate.  Normally, the party alleging a violation of the IDEA bears the burden of showing that the services received amounted to a denial of a FAPE. *See Schaffer ex rel. Schaffer*

complaint within 10 days. *See* 20 U.S.C. §§ 1415(c)(2)(B)(i)(I) & 1415(c)(2)(B)(ii).

[7] We do not address the reverse situation where the due process case is brought by the school district and the parents fail to file a response. Different considerations may apply in such circumstances, especially if the parents are pro se.  We leave that situation for a case that presents the issue.

v. *Weast*, 546 U.S. 49, 57–58 (2005). But here there was a procedural violation that deprived M.N. of the knowledge of what services were being offered to M.C. If parents don't know what services are offered to the student—in kind or in duration—it's impossible for them to assess the substantive reasonableness of those services. In such circumstances, the burden shifts to the school district to show that the services the student actually received were substantively reasonable. We remand so the District can have an opportunity to make such a showing before the district court.

**2.** Plaintiffs also claim that the District denied M.C. a FAPE by failing to develop measurable goals in all areas of need, including "the areas of life skills, residential travel, and business travel." Additionally, plaintiffs argue that the District failed to provide adequate orientation and mobility services, as well as adequate social skills instruction. The district court found that plaintiffs failed to meet their burden of showing that the IEP wasn't "reasonably calculated to confer [M.C.] with a meaningful benefit." *J.W.*, 626 F.3d at 439. In doing so, it relied on the Supreme Court's comment in *Rowley* that, by "an 'appropriate' education, it is clear that [Congress] did not mean a potential-maximizing education." 458 U.S. at 197 n.21. But *Rowley* "d[id] not attempt to establish any one test for determining the adequacy of educational benefits." *Id.* at 202. Recently, the Supreme Court clarified *Rowley* and provided a more precise standard for evaluating whether a school district has complied substantively with the IDEA: "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, slip op. at 11. In other words, the school must implement an IEP that is reasonably calculated to remediate and, if

appropriate, accommodate the child's disabilities so that the child can "make progress in the general education curriculum," *id.* at 3 (citation omitted), taking into account the progress of his non-disabled peers, and the child's potential. We remand so the district court can consider plaintiffs' claims in light of this new guidance from the Supreme Court.

## IV.   PREVAILING PARTY

The IDEA provides that a "court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parent or guardian of a child or youth with a disability who is a prevailing party." 20 U.S.C. § 1415(i)(3)(B)(i)(I). A parent need not succeed on every issue in order to be a prevailing party. *Park* v. *Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1035 (9th Cir. 2006). Rather, parents are prevailing parties if they "succeed[] on any significant issue in litigation which achieves *some* of the benefit [they] sought in bringing the suit." *Id.* at 1034 (emphasis in original) (citation omitted). M.N. is the prevailing party in this appeal and is therefore entitled to attorneys' fees. *See Ash* v. *Lake Oswego Sch. Dist.*, 980 F.2d 585, 590 (1992).

*   *   *

The District's failure to adequately document the TVI services and AT devices offered to M.C. violated the IDEA and denied M.C. a FAPE. These procedural violations deprived M.N. of her right to participate in the IEP process and made it impossible for her to enforce the IEP and evaluate whether the services M.C. received were adequate. At the very least, plaintiffs are entitled to have the District draft a proper IEP and receive compensatory education to

"place [M.C.] in the same position [he] would have occupied but for the school district's violations of [the] IDEA." *R.P. ex rel. C.P.* v. *Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) (citations omitted).  We remand the case to the district court for proceedings consistent with this opinion.

**REVERSED and REMANDED.**